## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## BIG STONE GAP DIVISION

**TERRY D. MULLINS,**       )
    Plaintiff            )
                          )
v.                         )      Civil Action No. 2:10cv00066
                          )
**MICHAEL J. ASTRUE,**    )      **REPORT AND RECOMMENDATION**
  **Commissioner of Social Security,**  )
    Defendant        )      BY: PAMELA MEADE SARGENT
                          )      United States Magistrate Judge

### *I.  Background and Standard of Review*

Plaintiff, Terry D. Mullins, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), determining that he was not eligible for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 423, 1381 *et seq.* (West 2003 & Supp. 2010). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which

a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Mullins protectively filed his applications for DIB and SSI on July 20, 2007, alleging disability as of January 15, 2007, due to back, leg and knee pain, bulging discs in his lower back, a pinched nerve in his right shoulder, anxiety and depression.[1] (Record, ("R."), at 108-11, 114-16, 138, 142, 150, 192.) The claims were denied initially and on reconsideration. (R. at 49-51, 55-57, 61, 63-65, 67-70, 72-73.) Mullins then requested a hearing before an administrative law judge, ("ALJ"). (R. at 74.) The hearing was held on May 11, 2009, at which Mullins was represented by counsel. (R. at 19-40.)

By decision dated June 26, 2009, the ALJ denied Mullins's claims. (R. at 10-18.) The ALJ found that Mullins met the nondisability insured status requirements of the Act for DIB purposes through September 30, 2007. (R. at 12.) The ALJ also found that Mullins had not engaged in substantial gainful activity since January 15, 2007, the alleged onset date. (R. at 12.) The ALJ determined that the medical evidence established that Mullins had severe impairments, namely degenerative disc disease of the lumbar spine with right radiculopathy of uncertain

---

[1] Mullins last met the insured status requirements of the Act for DIB purposes on September 30, 2007. (R. at 12, 138.) Therefore, for purposes of DIB, Mullins must establish that he became disabled on or before his date last insured.

level; a pain disorder associated with psychological factors; borderline intellectual functioning; a general medical condition; and a generalized anxiety disorder, but he found that Mullins's impairments did not meet or medically equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 12-13.) The ALJ also found that Mullins had the residual functional capacity to perform light[2] work that did not require the performance of complex or detailed tasks or more than superficial interaction with the public and co-workers. (R. at 16.) Therefore, the ALJ found that Mullins was able to perform his past relevant work as a pizza delivery driver. (R. at 18.) Thus, the ALJ found that Mullins was not under a disability as defined under the Act and was not eligible for benefits. (R. at 18.) *See* 20 C.F.R. §§ 404.1520(f), 416.920(f) (2010).

After the ALJ issued his decision, Mullins pursued his administrative appeals, (R. at 6), but the Appeals Council denied his request for review. (R. at 1-5.) Mullins then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2010). The case is before this court on Mullins's motion for summary judgment filed February 11, 2011, and the Commissioner's motion for summary judgment filed March 11, 2011.

---

[2] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If an individual can do light work, he also can do sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2010).

## II. Facts

Mullins was born in 1972, (R. at 22, 108, 114), which classifies him as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). Mullins testified that he completed the seventh grade.[3] (R. at 23, 156.) He has past relevant work experience as a construction laborer, a pizza delivery driver, a stocker and a bagger. (R. at 27, 151.)

Robert Jackson, a vocational expert, also was present and testified at Mullins's hearing. (R. at 33-39.) Jackson classified Mullins's work as a carpenter as medium[4] and skilled, as a pizza delivery driver as light and unskilled, as a stocker as heavy[5] and semiskilled and his job as a bagger as medium and unskilled. (R. at 34-35.) Jackson was asked to consider a hypothetical individual of Mullins's age, education and work experience who was limited as indicated by the assessments of Dr. Michael Moore, M.D. (R. at 35, 318-20, 364-66, 401-06.) Jackson testified that all work would be precluded. (R. at 36.) Jackson was then asked to consider the assessments of Dr. H.C. Alexander, III, M.D., and B. Wayne Lanthorn, Ph.D. (R. at 36, 367-75, 379-84.) Jackson testified that such an individual could perform Mullins's past relevant work as a pizza delivery driver. (R. at 36.) Jackson was next asked to consider the same individual, but who would miss one day a week or more.

---

[3] School records indicate that Mullins completed the ninth grade. (R. at 210.)

[4] Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If an individual can do medium work, he also can do sedentary and light work. *See* 20 C.F.R. §§ 404.1567(c), 416.967(c) (2010).

[5] Heavy work involves lifting items weighing up to 100 pounds at a time with frequent lifting or carrying of items weighing up to 50 pounds. If someone can do heavy work, he also can do medium, light and sedentary work. *See* 20 C.F.R. §§ 404.1567(d), 416.967(d) (2010).

(R. at 36.) Jackson testified that there would be no jobs available that such an individual could perform. (R. at 36-37.)

In rendering his decision, the ALJ reviewed records from Wise County Public Schools; Mountain View Regional Medical Center; Norton Community Hospital; Frontier Health; Dr. R. Michael Moore, M.D.; Dr. Kevin Blackwell, D.O.; Dr. Richard Surrusco, M.D., a state agency physician; Dr. Joseph Duckwall, M.D., a state agency physician; Dr. H. C. Alexander, III, M.D., a medical expert; and B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist.

In June 1999, Mullins presented to the emergency room with multiple contusions and a fracture of his right pubic bone. (R. at 295-304.) Mullins reported that he jumped off of a rolling car and that the car ran over his leg. (R. at 295.) Mullins was intoxicated. (R. at 295.) In September 2001, Mullins was involved in a motorcycle accident. (R. at 289-91.) He was diagnosed with a contusion to the right foot and right ankle and right wrist sprain. (R. at 290.) In November 2004, Mullins reported back pain after carrying roofing shingles. (R. at 273-75.) He had decreased range of motion and muscle spasm. (R. at 274.) He was diagnosed with acute myofascial lumbar pain, low back pain and acute sciatica on the right. (R. at 274.) On June 2, 2006, Mullins reported back pain after lifting and carrying a heavy object down three flights of stairs. (R. at 240-46, 260-65.) He was diagnosed with acute myofascial lumbar strain and acute chronic low back pain. (R. at 241, 261.) On June 12, 2006, Mullins complained of back pain with numbness around his buttocks and hips. (R. at 234-39, 254-59.) He had decreased range of motion, muscle spasm and vertebral point-tenderness. (R. at 235, 255.) He was diagnosed

with acute chronic low back pain. (R. at 235, 255.)

On April 8, 2005, Mullins was seen at the emergency room at Mountain View Regional Medical Center for complaints of upper back pain as a result of lifting. (R. at 230-31.) Mullins displayed no motor weakness. (R. at 230.) He was diagnosed with acute dorsal strain. (R. at 231.)

Between January 2006 and April 2009, Mullins treated with Dr. R. Michael Moore, M.D., for back, leg and hip pain. (R. at 329-37, 359-60, 397-406.) Mullins saw Dr. Moore six times in 2006, primarily for back and leg pain. (R. at 332-37.) Dr. Moore reported few abnormal findings, with the exception of tenderness in Mullins's low back and buttocks and positive straight leg raising on one visit. (R. at 332-37.) On January 24, 2006, an MRI of Mullins's lumbar spine showed annular tears at the L4-L5 and L5-S1 levels, but no evidence of central spinal or neural foraminal stenosis, disc herniation or mass effect. (R. at 248-49, 267-68.) X-rays of Mullins's right hip showed a simple cyst and ossific densities likely related to an old fracture, but no fracture deformity. (R. at 250, 272.) Pelvis x-rays showed an old fracture involving the right ischium, a cyst in the subcapital region of the right hip and a vague lucency with a slight sclerotic margin near the left femur. (R. at 251, 270.) X-rays of Mullins's lumbar spine showed mild narrowing of the L5-S1 disc space. (R. at 253, 269.)

On April 6, 2006, Mullins underwent an electromyogram, ("EMG"), and nerve conduction study at Norton Community Hospital. (R. at 247, 266.) The nerve conduction study and EMG findings were consistent with mild distal chronic deep

peroneal neuropathy, which was described as a "fairly common finding," and may be secondary to a previous ankle injury or poorly fitting shoes. (R. at 247, 266.) The EMG findings of Mullins's lower lumbosacral paraspinal muscles were described as being of "uncertain clinical significance," but may be associated with mild and/or early lower lumbar or sacral radiculopathy. (R. at 247, 266.) No other abnormalities were noted. (R. at 247, 266.)

In 2007, Mullins attended three visits with Dr. Moore. (R. at 329-31.) In January 2007, Dr. Moore noted that Mullins's low back was tender, and in October 2007, he reported that Mullins had tenderness in his right hip. (R. at 329-31.) Otherwise, his physical findings were unremarkable. (R. at 329-31.) Dr. Moore saw Mullins six more times in 2008 and 2009. (R. at 359-60, 397-400.) Dr. Moore documented few abnormal examination findings. (R. at 359-60, 397-400.) In April 2009, Dr. Moore reported that Mullins had tenderness in his low back and right hip, reduced range of motion and osteoarthritis in his hands. (R. at 397.)

On July 17, 2007, Dr. Moore completed a medical assessment indicating that Mullins could occasionally lift and carry items weighing up to 10 pounds and frequently lift and carry items weighing up to two pounds. (R. at 318.) He reported that Mullins could stand and/or walk a total of up to two hours in an eight-hour workday and that he could do so for up to 15 minutes without interruption. (R. at 318.) Dr. Moore reported that Mullins could sit for up to three hours in an eight-hour workday and that he could do so for up to 30 minutes without interruption. (R. at 319.) He reported that Mullins should never climb, stoop, kneel, balance, crouch or crawl. (R. at 319.) He reported that Mullins's abilities to reach,

to push and to pull were affected by his impairment. (R. at 319.) Dr. Moore reported that Mullins could not work around heights, moving machinery, temperature extremes, humidity or vibration. (R. at 320.) He reported that Mullins would miss more than two days of work a month as a result of his impairments. (R. at 320.)

On May 16, 2008, Dr. Moore completed a mental assessment indicating that Mullins had a limited, but satisfactory, ability to interact with supervisors, to function independently and to understand, remember and carry out simple job instructions. (R. at 361-63.) He found that Mullins had a seriously limited ability to follow work rules, to relate to co-workers, to use judgment, to deal with work stresses, to maintain attention and concentration, to understand, remember and carry out detailed job instructions, to maintain personal appearance, to behave in an emotionally stable manner and to demonstrate reliability. (R. at 361-62.) Dr. Moore opined that Mullins had no useful ability to deal with the public, to understand, remember and carry out complex instructions and to relate predictably in social situations. (R. at 361-62.) He found that Mullins would be absent from work more than two days a month. (R. at 363.)

That same day, Dr. Moore completed a physical assessment indicating that Mullins could occasionally lift and carry items weighing up to five pounds and frequently lift and carry items weighing up to two pounds. (R. at 364-66.) He found that Mullins could stand and/or walk a total of one hour in an eight-hour workday and that he could do so for up to 15 minutes without interruption. (R. at 364.) Dr. Moore opined that Mullins could sit for up to two hours in an eight-hour workday

and that he could do so for up to 30 minutes without interruption. (R. at 365.) He reported that Mullins could never climb, stoop, kneel, balance, crouch or crawl. (R. at 365.) He noted that Mullins's abilities to reach, to handle, to feel, to push and to pull were affected by his impairments. (R. at 365.) Dr. Moore reported that Mullins could not work around heights, moving machinery, temperature extremes, humidity or vibration. (R. at 366.) He reported that Mullins would miss more than two days of work a month, missing one to two weeks of work at a time, as a result of his impairments. (R. at 366.)

On April 15, 2009, Dr. Moore completed another mental assessment indicating that Mullins had a more than slightly limited, but satisfactory, ability to understand, remember and carry out simple instructions, to make judgments on simple work-related decisions and to interact appropriately with the public, with supervisors and with co-workers. (R. at 401-03.) He reported that Mullins had a seriously limited ability to understand, remember and carry out complex instructions, to make judgments on complex work-related decisions and to respond appropriately to usual work situations and to changes in a routine work setting. (R. at 401-02.) He found that Mullins would be absent from work more than two days a month. (R. at 403.)

That same day, Dr. Moore completed a medical assessment indicating that Mullins could occasionally lift and carry items weighing up to five pounds and frequently lift and carry items weighing up to two pounds. (R. at 404.) He reported that Mullins could stand and/or walk a total of two hours in an eight-hour workday and that he could do so for up to 15 minutes without interruption. (R. at 404.) Dr.

Moore reported that Mullins could sit for up to three hours in an eight-hour workday and that he could do so for up to 30 minutes without interruption. (R. at 405.) He reported that Mullins could not climb, stoop, kneel, balance, crouch or crawl. (R. at 405.) He also reported that Mullins could not reach, push or pull. (R. at 405.) Dr. Moore reported that Mullins could not work around heights, moving machinery, temperature extremes or noise. (R. at 406.) He found that Mullins would be absent from work more than two days a month. (R. at 406.)

On October 27, 2006, Mullins was seen at Frontier Health for complaints of depression and anxiety. (R. at 315-17.) Mullins also reported that he had difficulty dealing with his anger. (R. at 315, 317.) He was diagnosed with a panic disorder with agoraphobia, depressive disorder and impulse-control disorder. (R. at 316.) Mullins's then-current Global Assessment of Functioning score, ("GAF"),[6] was assessed at 52,[7] with his highest GAF score being 52 within the previous six months and his lowest GAF score being 45[8] within the previous six months. (R. at 316.) On November 16, 2006, Mullins reported that he was working at Papa John's but stated that he had several angry outbursts due to not being able to spend time with his kids. (R. at 312.) It was reported that Mullins appeared to be mildly depressed and anxious with a congruent affect. (R. at 312.) On December 21, 2006,

---

[6] The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994.)

[7] A GAF score of 51-60 indicates that the individual has "[m]oderate symptoms ... OR moderate difficulty in social, occupational, or school functioning...." DSM-IV at 32.

[8] A GAF score of 41-50 indicates that the individual has "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning...." DSM-IV at 32.

Mullins reported that he had anger outbursts. (R. at 311.) He stated that he was written up at work for having an argument with the manager. (R. at 311.) It was reported that Mullins was mildly anxious with congruent affect. (R. at 311.) On January 4, 2007, Mullins's wife called Rachael Rose, M.S., stating that Mullins had been very depressed and irritable. (R. at 309.) She reported that Mullins had been staying in the bed most of the week. (R. at 309.) On January 11, 2007, Mullins reported that he became depressed a couple of days prior to Christmas and stated that he did not want to be around people. (R. at 308.) He stated that he argued with family members as a result of his mood. (R. at 308.) He stated that he stayed in bed for a week and did not report to work due to depression. (R. at 308.) Mullins stated that it was possible that he would lose his job due to his anger and not being able to get along well with others. (R. at 308.) Rose reported that Mullins's mood appeared mildly depressed and moderately anxious with congruent affect. (R. at 308.)

On October 21, 2007, Dr. Kevin Blackwell, D.O., examined Mullins at the request of Disability Determination Services. (R. at 338-42.) Dr. Blackwell reported that Mullins did not appear to be in any acute distress. (R. at 340.) He was alert, cooperative and oriented with good mental status. (R. at 340.) Dr. Blackwell reported that Mullins's gait was symmetrical and balanced. (R. at 340.) Mullins had tenderness in the right SI joint. (R. at 340.) Dr. Blackwell reported that Mullins's upper and lower extremities were normal. (R. at 340.) Straight leg raising tests were negative. (R. at 340.) No limitation was noted in Mullins's hand usage. (R. at 340.) An x-ray of Mullins's right shoulder was normal. (R. at 326.) X-rays of Mullins's left knee showed slight spurring at the superior aspect of the patella, possibly representing ligamentous calcification or a subtle avulsion. (R. at 327.) X-rays of

Mullins's right knee were normal. (R. at 328.) Dr. Blackwell diagnosed chronic low back pain, right shoulder pain, bilateral knee pain and probable bilateral carpal tunnel syndrome. (R. at 340.) Dr. Blackwell opined that Mullins could maximally lift items weighing up to 50 pounds and frequently lift items weighing up to 25 pounds. (R. at 341.) He opined that Mullins could bend and stoop at the waist for up to one-third of the day and squat and kneel for up to two-thirds of the day. (R. at 341.) Dr. Blackwell opined that Mullins could sit for up to eight hours in an eight-hour workday, assuming normal positional changes and stand for up to six hours in an eight-hour workday, assuming normal positional changes every 90 minutes. (R. at 341.) No other limitations were noted. (R. at 341.)

On October 31, 2007, Dr. Richard Surrusco, M.D., a state agency physician, opined that Mullins had the residual functional capacity to perform medium work. (R. at 343-50.) He found that Mullins could occasionally climb, balance, stoop, kneel, crouch and crawl. (R. at 345.) No manipulative, visual or communicative limitations were noted. (R. at 345-46.) Dr. Surrusco found that Mullins should avoid moderate exposure to hazards, such as machinery and heights. (R. at 346.)

On March 25, 2008, Dr. Joseph Duckwall, M.D., a state agency physician, opined that Mullins had the residual functional capacity to perform medium work. (R. at 351-58.) He found that Mullins could occasionally climb, balance, stoop, kneel, crouch and crawl. (R. at 353.) No manipulative, visual or communicative limitations were noted. (R. at 353-54.) Dr. Duckwall found that Mullins should avoid moderate exposure to hazards, such as machinery and heights. (R. at 354.) Dr. Duckwall reported that despite some degenerative changes in the lumbar spine,

Mullins was not precluded from performing all available work in the national economy. (R. at 358.) He reported that Mullins retained adequate range of motion and muscle strength, as well as adequate range of motion to all extremities. (R. at 358.)

On January 5, 2009, Dr. H. C. Alexander, III, M.D., a medical expert, completed a Medical Source Statement Of Ability To Do Work-Related Activities (Physical) at the request of Disability Determination Services. (R. at 369-75.) He reported that Mullins could occasionally lift and carry items weighing up to 20 pounds and frequently lift and carry items weighing up to 10 pounds. (R. at 369.) Dr. Alexander reported that Mullins could walk a total of four hours in an eight-hour workday and that he could do so for up to 30 minutes without interruption. (R. at 370.) He reported that Mullins could frequently use his hands to reach, to handle, to push and to pull and continuously use his hands to finger and to feel. (R. at 371.) Dr. Alexander reported that Mullins could frequently use his feet. (R. at 371.) He reported that Mullins could occasionally balance, stoop, kneel, crouch and crawl, frequently climb stairs and ramps and never climb ladders or scaffolds. (R. at 372.) He reported that Mullins could occasionally work around temperature extremes, frequently operate a motor vehicle, work around humidity and wetness, dust, odors, fumes and pulmonary irritants, vibrations and loud noise and never work around unprotected heights or moving machinery. (R. at 373.)

On March 25, 2009, B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist, evaluated Mullins at the request of Disability Determination Services. (R. at 379-84.) Mullins reported that he would "get depressed but it lasts briefly

usually for no longer than a day." (R. at 382.) He reported significant improvement with regard to his anger and that he no longer had explosive rages. (R. at 382.) Lanthorn diagnosed chronic pain disorder associated with both psychological factors and general medical conditions, generalized anxiety disorder and borderline intellectual functioning. (R. at 383.) A panic disorder without agoraphobia was ruled out. (R. at 383.) Lanthorn indicated that Mullins had a then-current GAF score of 55. (R. at 383.)

Lanthorn completed a mental assessment indicating that Mullins had a slight limitation in his ability to understand, remember and carry out simple instructions. (R. at 376-78.) He indicated that Mullins had a satisfactory ability to make judgments on simple work-related decisions, to interact appropriately with the public, with supervisors and with co-workers and to respond appropriately to usual work situations and to changes in a routine work setting. (R. at 376-77.) Lanthorn reported that Mullins was seriously limited, but not precluded, in his ability to understand, remember and carry out complex instructions and to make judgment on complex work-related decisions. (R. at 376.)

## III.  Analysis

The Commissioner uses a five-step process in evaluating SSI and DIB claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2010); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and

5) if not, whether he can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1250(a), 416.920(a) (2010).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2010); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated June 26, 2009, the ALJ denied Mullins's claims. (R. at 10-18.) The ALJ determined that the medical evidence established that Mullins had severe impairments, namely degenerative disc disease of the lumbar spine with a right radiculopathy of uncertain level; a pain disorder associated with both psychological factors; borderline intellectual functioning; a general medical condition; and a generalized anxiety disorder, but he found that Mullins's impairments did not meet or medically equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 12-13.) The ALJ also found that Mullins had the residual functional capacity to perform light work that

did not require the performance of complex or detailed tasks or more than superficial interaction with the public and co-workers. (R. at 16.) Therefore, the ALJ found that Mullins was able to perform his past relevant work as a pizza delivery driver. (R. at 18.) Thus, the ALJ found that Mullins was not under a disability as defined under the Act and was not eligible for benefits. (R. at 18.) *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

Mullins argues that the ALJ erred by finding that he had the residual functional capacity to perform his past relevant work. (Plaintiff's Memorandum In Support Of His Motion For Summary Judgment, ("Plaintiff's Brief"), at 5-6.) Mullins argues that the ALJ's determination of his residual functional capacity did not include all of the limitations set forth by Lanthorn and that the ALJ erred by rejecting all of the limitations set forth by Dr. Moore. (Plaintiff's Brief at 6.)

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein.

*See Hays*, 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. §§ 404.1527(d), 416.927(d), if he sufficiently explains his rationale and if the record supports his findings.

Mullins argues that the ALJ erred by finding that he had the residual functional capacity to perform his past relevant work. (Plaintiff's Brief at 5-6.) Mullins further argues that in making this finding, the ALJ failed to include all of the limitations set forth by Lanthorn and erred by rejecting all of the limitations set forth by Dr. Moore. (Plaintiff's Brief at 6.)

In this case, the ALJ found that Mullins had the residual functional capacity to perform light work that did not require the performance of complex or detailed tasks or more than superficial interaction with the public and co-workers. (R. at 16.) Based on my review of the record, I find that substantial evidence exists to support this finding. The record shows that Mullins received only routine and conservative medical treatment for his chronic pain complaints. (R. at 30, 329-37, 359-60, 397-400.) Mullins testified that medication helped his back and leg pain without significant side effects. (R. at 30.)

Mullins treated with Dr. Moore between January 2006 and April 2009. (R. at 329-37, 359-60, 397-406.) During this time, Dr. Moore reported few abnormal

findings, with the exception of tenderness in Mullins's low back and buttocks and positive straight leg raising on one visit. (R. at 332-37.) An MRI of Mullins's lumbar spine performed in 2006 showed no evidence of central spinal or neural foraminal stenosis, disc herniation or mass effect. (R. at 248-49, 267-68.) X-rays of Mullins's lumbar spine showed mild narrowing of the L5-S1 disc space. (R. at 253, 269.) The findings from an EMG performed in April 2006 of Mullins's lower lumbosacral paraspinal muscles were described as being of "uncertain clinical significance." (R. at 247, 266.) In October 2006, Mullins was seen at Frontier Health for depression, anxiety and anger issues. (R. at 315-17.) In November 2006, Mullins was described as mildly depressed and anxious. (R. at 312.) In January 2007, it was reported that Mullins appeared mildly depressed and moderately anxious. (R. at 308.) In January and October 2007, Dr. Moore noted tenderness in Mullins's low back and right hip, but otherwise, his physical findings were unremarkable. (R. at 329-31.) In October 2007, Dr. Blackwell reported that Mullins's gait was symmetrical and balanced. (R. at 340.) Straight leg raising tests were negative. (R. at 340.) Dr. Blackwell reported that Mullins was alert and oriented with good mental status. (R. at 340.) Two state agency physicians found that Mullins had the residual functional capacity to perform medium work, and in January 2009, Dr. Alexander opined that Mullins could perform light work. (R. at 343-58, 369-75.)

In March 2009, Mullins reported to Lanthorn that he would get depressed, but that it lasted briefly, no longer than a day. (R. at 382.) He reported significant improvement with regard to his anger issues. (R. at 382.) Lanthorn reported that Mullins was slightly limited in his ability to understand, remember and carry out

simple instructions and that he had a satisfactory ability to make judgments on simple work-related decisions, to interact appropriately with the public, with supervisors and with co-workers and to respond appropriately to usual work situations and to changes in a routine work setting. (R. at 376-77.) Lanthorn reported that Mullins was seriously limited, but not precluded, in his ability to understand, remember and carry out complex instructions and to make judgment on complex work-related decisions. (R. at 376.) In April 2009, Dr. Moore noted tenderness in Mullins's low back and right hip and reduced range of motion. (R. at 397.) However, he noted no other abnormalities. (R. at 397.)

The record does not indicate that Mullins required or sought more aggressive or invasive treatment measures during the relevant period. In fact, after his alleged onset date, he visited the emergency room only once for headache pain. (R. at 386-96.) In addition, Mullins had almost no mental health treatment, attending three individual counseling sessions during the relevant period. (R. at 308-17.)

The ALJ considered and evaluated the opinions of Lanthorn and Dr. Moore in determining Mullins's residual functional capacity. (R. at 14-15, 17-18.) A treating physician's opinion is entitled to controlling weight when it is well-supported by the medical evidence of record, and consistent with the other substantial evidence of record. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ noted that he was giving greater weight to the opinion of the medical expert. (R. at 17.) The ALJ found that the objective medical evidence and the reports of Lanthorn and Dr. Alexander did not support Dr. Moore's conclusions. (R. at 17.) Mullins argues that the ALJ should have included two of the limitations

in Lanthorn's narrative report, namely, that he would have difficulties adapting to changes and requirements in the work setting and moderate to marked difficulties sustaining concentration and persisting at tasks. At the hearing, the vocational expert testified that problems adapting to changes would not apply to simple, unskilled work, but instead to jobs where the duties would change every day. (R. at 37-38.) In Lanthorn's narrative report, he found that Mullins had moderate to marked difficulties sustaining concentration and persisting at tasks. (R. at 384.) The ALJ noted that, additional limitations beyond those included in the residual functional capacity assessment were not supported by the record. (R. at 18.) The totality of the evidence failed to support a marked limitation in sustaining concentration and persisting at tasks. From a mental standpoint, Mullins's mental health treatment consisted of three individual counseling sessions, and his examiners, including Lanthorn, reported unremarkable findings. (R. at 308-14, 340, 383-84.) Mullins admitted that his bouts of depression lasted only briefly and that his anger had improved. (R. at 382.) From a chronic pain perspective, Mullins testified that medication helped his symptoms and he received only routine and conservative treatment. The ALJ accounted for moderate limitations in concentration by limiting Mullins to work requiring no complex or detailed tasks. (R. at 16.) Based on the above, I find that significant evidence exists to support the ALJ's weighing of the medical evidence.

For all of these reasons, I find that substantial evidence exists in the record to support the ALJ's residual functional capacity finding.

# PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence exists to support the Commissioner's finding with regard to Mullins's residual functional capacity;

2. Substantial evidence exists to support the Commissioner's finding that Mullins can perform his past relevant work as a pizza delivery driver; and

3. Substantial evidence exists to support the Commissioner's finding that Mullins was not disabled under the Act and was not entitled to DIB or SSI benefits.

# RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Mullins's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the final decision of the Commissioner denying benefits.

## <u>Notice to Parties</u>

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(C) (West 2006 & Supp. 2010):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules

of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED:     June 15, 2011.

s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE